UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| GRANGE MUTUAL CASUALTY CO., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:08-15-ART |
| | ) | |
| v. | ) | |
| | ) | |
| SAFECO INSURANCE CO. OF AMERICA, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Intervening Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GEORGE C. DAMRON, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GRANGE MUTUAL CASUALTY CO., | ) | |
| | ) | |
| Intervening Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

## I. INTRODUCTION

Intervening Plaintiff, Safeco Insurance Company of America, filed a Motion to Remand. *See* R. 15 (Motion), R. 36 (Supplemental Memorandum), and R. 43 (Reply).  Petitioner Grange Mutual responded and opposed any remand/dismissal of this action.  *See* R. 18 (Response), R. 34 (Supplemental Memorandum), and R. 42 (Additional Supplement).  The Court held a hearing on June 10, 2008, to discuss the motion.  R. 41.

At the outset, the Intervening Plaintiff's Motion to Remand is procedurally improper because the case is not in federal court pursuant to removal, and the Intervening Plaintiff should have instead moved to dismiss. In any event, everyone has treated Intervening Plaintiff's motion as one to dismiss based on jurisdictional grounds, and this Court does so here.

The pleadings present two questions for the Court. First, does the Court have jurisdiction to hear this case? Second, assuming the Court has jurisdiction, in its discretion under the Declaratory Judgment Act, should it exercise that jurisdiction?

## II. THE COURT'S JURISDICTION

Since federal courts are courts of limited jurisdiction, for a federal court to hear an action, it must have subject matter jurisdiction. Title 28 of the United States Code in Section 1332 provides that this jurisdiction can be based on the fact that the parties are from different states, but only if the matter in controversy exceeds $75,000 and the parties are completely diverse. 28 U.S.C. § 1332(a). Here no dispute exists regarding diversity of citizenship, but the parties disagree over whether the amount in controversy requirement has been met.

*A. Amount in Controversy*

The general rule is that the amount in controversy is the value to the petitioner of the rights he seeks to protect. *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007). The value of a right can be measured by the losses the party will incur if its right is not protected. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977).

To determine the value of the controversy, the Court relies on the amount alleged in the complaint. *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990) ("In a federal diversity action, the amount alleged in the complaint will suffice unless it appears to a legal certainty that

the plaintiff in good faith cannot claim the jurisdictional amount." (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)). The Court "examine[s] the complaint at the time it was filed" to determine whether the amount-in-controversy requirement has been satisfied, *id.* (citing *Worthams v. Atlanta Life Ins. Co.*, 533 F.2d 994, 997 (6th Cir. 1976)), and "[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction," *St. Paul Mercury Indem. Co.*, 303 U.S. at 289–90.

For a case to be dismissed on amount in controversy grounds it must "appear[] that the plaintiff's assertion of the amount in controversy was made in bad faith." *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008) (internal quotation omitted) (quoting *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 157 (6th Cir. 1993)). "A showing of bad faith is made if the [opposing party] demonstrates 'to a legal certainty[] that the original claim was really for less than the amount-in-controversy requirement.'" *Id.* (quoting *Gafford*, 997 F.2d at 157) (alteration in original). Furthermore, "[t]he inability of [a] plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction." *St. Paul Mercury Indem. Co.*, 303 U.S. at 289.

  *B. Analysis*

Grange Mutual argues that (1) the potential damages of the underlying suit, plus (2) the amount it will have to pay to defend its insured exceed the $75,000 minimum. The Court focuses on each of these in turn.

(1) In its original Petition for Declaration of Rights, Grange indicated that the limits of its policy were $50,000 of property damage per accident, $50,000 of bodily injury per person, and $100,000 per accident. R. 1 at 2. Grange Mutual subsequently amended these figures and stated

3

that the limits of the policy are $100,000 for property damage, $100,000 for bodily injury, and $300,000 per accident. R. 42 at 3. Grange Mutual, however, does not argue that the Plaintiff in the underlying state case seeks the policy limits. And, Safeco has submitted an affidavit from the Plaintiff in the underlying state case stating that his damages do not exceed $75,000. R. 36, Attach. 1.

The Sixth Circuit has not decided whether in a declaratory judgment action courts should measure the amount in controversy by the policy limits or by the value of the underlying claim. The rule in other circuits has been that "the policy limits are controlling 'in a declaratory action . . . as to the validity of the entire contract between the parties,'" but that when the applicability of an insurance policy to a particular occurrence is the question, the amount in controversy is measured by the value of the underlying claim. *Hartford Ins. Group v. Lou-Con, Inc.*, 293 F.3d 908, 911 (5th Cir. 2002) (quoting 14B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3710 (3d ed. 1998)); *see Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997) (finding the maximum liability under a rental agreement is "relevant to determining the amount in controversy only if the validity of the entire insurance policy is at issue"); *Home Ins. Co. of N.Y. v. Trotter*, 130 F.2d 800, 803 (8th Cir. 1942) (finding that where the issue is the validity or invalidity of a policy, the value of the policy is the amount in controversy). It seems logical that the policy limits should not control when the entirety of the policy is not "in dispute," but rather only a claim on that policy. Thus, following this logic, the underlying Plaintiff's claim does not exceed $75,000.

(2) The fact that the underlying claim is not sufficient for this Court's jurisdiction is not fatal because the value of the rights Grange Mutual seeks to protect extend beyond merely the

value of the underlying litigation. Grange Mutual seeks a declaration of its rights under an insurance liability policy that provides both for coverage <u>and</u> defense. While attorney's fees and/or defense costs are not normally considered when determining the amount in controversy, *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007), they are included in the amount in controversy (1) when provided by contract, (2) when provided by a statute that expressly mandates or allows the payment of such fees, and (3) when an insurance company will have to pay the underlying defense costs of the insured. *See id.*; *Springstead v. Crawfordsville State Bank*, 231 U.S. 541, 541–42 (1913) ("Could such an attorney's fee be considered in determining whether the jurisdictional amount was involved? We think so. . . . [T]he moment suit was brought the liability to pay the fee became a 'matter in controversy,' and as such to be computed in making up the required jurisdictional amount . . . ."); *see also Pub. Funding Corp. v. Lawrence County Fiscal Court*, No. 89-5486, 1989 WL 153970, at *2 (6th Cir. Dec. 21, 1989) (unpublished) (finding attorney's fees provided for in a lease to be part of the amount in controversy); *Farmers Ins. Co. v. McClain*, 603 F.2d 821, 823 (10th Cir. 1979) (stating that insurer's potential losses can include the value of its obligation to defend its insured in an underlying suit); *Stonewall Ins. Co. v. Lopez*, 544 F.2d 198, 199 (5th Cir. 1976) (finding the amount in controversy to include the "pecuniary value of the obligation to defend a separate lawsuit"). Here, under the policy, Grange Mutual must pay the defense costs of its insured. *See* Grange Mutual's Insurance Policy, R. 1, Ex. 2, at A-1 (indicating that Grange will settle or defend claims seeking damages against an insured). Thus, the extent of damage Grange Mutual might suffer—its potential loss—is not limited to the value of the state court claim; it also includes the costs it would incur in representing Mr. Damron in the state court action.

Consequently, Safeco has failed to show to a legal certainty that Grange Mutual's original claim could not meet the jurisdictional minimum. Indeed, it seems that when you combine the underlying damages and costs of defense, it very well could. Thus, the Court has jurisdiction to hear the action.

### III. THE COURT'S DISCRETION TO EXERCISE ITS JURISDICTION

Though the Court has jurisdiction and *could* hear this declaratory judgment action, it must also determine whether it *should* do so. The Declaratory Judgment Act provides authority for "any court of the United States" to "declare the rights and legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). The Supreme Court has made clear, however, that when a simultaneous state court claim has been undertaken, a district court's ability to hear an action under the Declaratory Judgment Act does not compel it to do so. *E.g. Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494–95 (1942). Consequently, this act "[c]onfers on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

District courts must exercise this discretion cautiously. We are, after all, courts of limited jurisdiction. And, if our decision to keep a matter does nothing more than cause the parties to engage in litigation on two fronts, we are neither furthering the interests of justice nor preserving parties' resources. *See Panhandle E. Pipe Line Co. v. Mich. Consol. Gas Co.*, 177 F.2d 942, 944 (6th Cir. 1949) ("A doctrine conditioning the exercise of discretion in granting a declaratory judgment that is to be derived from the cases, is that no declaration should be made unless it serves a useful, practical purpose." (citing *United States v. Jones*, 176 F.2d 278 (9th Cir. 1949), *Smith v. Mass. Mut. Life Ins. Co.*, 167 F.2d 990 (5th Cir. 1948), and *Aetna Cas. & Sur. Co. v.*

*Quarles*, 92 F.2d 321 (4th Cir. 1937)).  The Sixth Circuit recognized as much when it cautioned district courts not to jump into the middle of ongoing litigation: "'declaratory judgment actions seeking an advance opinion of indemnity issues are seldom helpful in resolving an ongoing action in another court.'"  *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004) (quoting *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986)).

On the other hand, no per se rule exists against exercising jurisdiction.  *Id.* at 812–13.  To guide district courts in their determination, the Sixth Circuit has created five factors that courts should consider:

> 1) whether the judgment would settle the controversy;
>
> 2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
>
> 3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
>
> 4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
>
> 5) whether there is an alternative remedy that is better or more effective.

*Id.* at 813 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)).  This Court will look at each of these factors in turn.

*A. The First Two Factors: Will the Action Settle the Controversy or Clarify the Legal Relations at Issue?*

The first two factors in the analysis are closely related, and courts often consider them together.  *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008).  Because there is a split in Sixth Circuit decisions regarding the proper interpretation of each factor, the Court will

consider them together here.

Does the first factor mean that the declaratory judgment action must settle the ultimate controversy or just the controversy before the district court in the declaratory judgment action? This has been the subject of much debate within the Sixth Circuit. Some decisions have held that it only must settle, for example, the insurance coverage issue (i.e. is John Doe covered by insurance company in the underlying state court action) and not the underlying controversy itself. *See Scottsdale*, 513 F.3d at 555–56; *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003); *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987); *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n.1 (6th Cir. 1986). In contrast, other decisions have concluded that regardless of whether a declaratory judgment action may clarify the legal relationship at issue, it does not settle the controversy for the purposes of this factor if it does not settle the ultimate controversy. *See Travelers Indem. Co. v. Bowling Green Prof'l Assoc.*, 495 F.3d 266, 272 (6th Cir. 2007); *U.S. Fire Ins. Co. v. Abex Aluminum, Inc.*, No. 04-4426, 2006 WL 41185, at *3 (6th Cir. Jan. 6, 2006) (unpublished); *Bituminous Cas. Corp.*, 373 F.3d at 814; *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 1991); *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984)).

Of course, the split guidance puts a district court in a precarious position. The *Scottsdale* Court did an excellent job of trying to reconcile these split positions and appeared to instruct courts to look at the underlying facts; i.e., whether the question was already being or could be considered in state court, whether the parties were the same in state and federal court, whether parties in the state action would be bound by the federal court action to which they were not a part, whether the issue was one being developed by state court discovery, and whether the scope

8

of coverage or obligation to defend was before the state court. *See Scottsdale*, 513 F.3d at 555–56.

Nevertheless, under an abuse of discretion standard the Sixth Circuit has both reversed and affirmed district court decisions to exercise jurisdiction in cases which were factually similar to this one. In both *Travelers Indemnity Company* and *Scottsdale*, parties sought declaratory judgment on the obligations of an insurance company to defend and/or indemnify the insured in an underlying state action. *Scottsdale*, 513 F.3d at 550–51; *Travelers Indem. Co.*, 495 F.3d at 268–69. In both instances the insurance question was one of Kentucky state law. *Scottsdale*, 513 F.3d at 550–51; *Travelers Indem. Co.*, 495 F.3d at 268–69. In neither case were the insurance companies parties in the underlying state action, and in both cases additional parties in the state court action were not parties in the declaratory judgment action. *Scottsdale*, 513 F.3d at 550–51, *Travelers Indem. Co.*, 495 F.3d at 268–69. Finally, in both cases the district court concluded that the declaratory judgment action could settle the immediate controversy and ultimately exercised jurisdiction. *Scottsdale*, 513 F.3d at 555–56; *Travelers Indem. Co.*, 495 F.3d at 271–72.

Yet the Sixth Circuit reversed the district court's decision in *Travelers Indemnity*, 495 F.3d at 273–74, and affirmed the district court's decision in *Scottsdale*, 513 F.3d at 570. Furthermore, in both cases the Sixth Circuit dealt with the issue of whether "settle the controversy" means the immediate or ultimate controversy. The Sixth Circuit agreed with the *Scottsdale* district court's interpretation that settling the immediate controversy was sufficient to satisfy this factor, *Scottsdale*, 513 F.3d at 556, while in *Travelers Indemnity* the Sixth Circuit rejected that same conclusion, noting that "[t]he district court's decision could not settle the controversy in the underlying state court litigation; thus the first factor favors the court not

9

exercising jurisdiction." *Travelers Indem. Co.*, 495 F.3d at 272. Finally, this is not an instance where the rule has evolved over time within the Circuit. Both of these cases are recent—*Scottsdale* was decided in 2008, and *Travelers Indemnity* was decided in 2007—yet each adopts a distinct line of Sixth Circuit precedent as controlling.

The Sixth Circuit is similarly split on the second factor's question of "whether the district court's decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action." *Scottsdale*, 513 F.3d at 557. The *Scottsdale* Court concluded that in order for a declaratory judgment to clarify the legal relations at issue it must only provide a final resolution of the discrete dispute presented, and it need not settle all the relations in question in state court. *Id.* That court explained that if the judgment can "resolve, once and finally, the question of the insurance indemnity obligation of the insurer," that is sufficient. *Id.* Though this approach is consistent with the first line of precedent, it is contrary to the second. The Sixth Circuit in both *Bituminous* and *Travelers Indemnity* explicitly rejected this reasoning, noting in both cases that the factor was not satisfied because the judgment would not clarify the legal relations between the other parties to the state court action, "parties who may be potentially affected by the judgment." *Travelers Indem. Co.*, 495 F.3d at 272; *see Bituminous Cas. Corp.*, 373 F.3d at 814 ("[A]lthough a declaratory judgment would clarify the legal relationship between Bituminous and J & L pursuant to the insurance contracts, the judgment would not clarify the legal relationship between Shields and J & L in the underlying state action.").

The Court is unable to reconcile the holdings in *Scottsdale* and *Travelers Indemnity*, and the action here would settle only the immediate and not the ultimate controversy, clarifying only

10

clarify some, not all of the legal relations. Without more, the Court could find either of these two factors to weigh in favor of or against exercising jurisdiction. Additionally, the factors could be interpreted to ask essentially the same question: can the federal court decide every aspect of the case or only part of it?

Because this dispute makes it tough for a district court to know when to exercise jurisdiction, it makes sense for this Court to look for guidance in the Sixth Circuit's purpose behind creating these factors in the first place. In formulating the five factor test, the Sixth Circuit looked to the principles underlying the exercise of jurisdiction over declaratory judgment actions. The Court explained, "[t]he two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed." *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citing E. BORCHARD, DECLARATORY JUDGMENTS 299 (2d ed. 1941), *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998 (2d Cir. 1969), *Panhandle E. Pipe Line Co. v. Mich. Consol. Gas Co.*, 177 F.2d 942, 944 (6th Cir. 1949), and *Md. Cas. Co. v. Boyle Constr. Co.*, 123 F.2d 558, 565 (4th Cir. 1941)). The court then incorporated these two principles—that the judgment should clarify or settle the legal relations at issue or terminate and afford relief from the controversy—into the first two factors of its five factor test.

This historical background provides some evidence that these two factors are meant to address distinct issues. It indicates that one factor is meant to measure whether the action will

terminate or settle the ultimate controversy, while the other is meant measure the usefulness of the action in clarifying discrete legal relations at issue. Thus, while one factor asks whether the federal court can decide all the issues and end all litigation amongst all the parties, the other factor asks whether the federal court's decision could provide a complete resolution to at least one issue, deciding the rights and obligations and completely ending the litigation between at least two parties. The first line of precedent, represented by *Scottsdale*, essentially decides both factors based on the second question, while the second line of precedent, represented by *Travelers Indemnity*, asks the first question to decide both factors. Based on the historical background, this Court adopts an approach that is not wholly consistent with either of the two lines of precedent. It interprets the first factor to ask whether the ultimate controversy is settled by the federal action and interprets the second to ask whether the federal action can clarify the legal relations of at least two parties and settle at least one discrete issue.

Here the federal declaratory judgment action would not settle the ultimate controversy—factor one—but it would nevertheless clarify the legal relations at issue—factor two. *Cf. Bituminous Cas. Corp.*, 373 F.3d at 817 ("A declaratory judgment in this case would not settle the controversy or resolve all the underlying legal relations."). The Court recognizes that one could look at this and say that it renders both factors irrelevant because this is true in most actions. Analyzing the factors, however, does not end the inquiry. Courts must go on and balance the factors. And, clearly factor one—resolving the ultimate dispute—should weigh more heavily than factor two—just resolving some legal relation at issue.

Now, getting back to the case at hand. At its core, this case revolves around a car accident. In the state court, Steven Pinson has sued George Damron for negligently causing a car

12

accident. *See e.g.,* R. 15, Attach. 2 (State Court Complaint); R. 1 at 2, ¶ 8. In that same action Mr. Pinson is suing Safeco Insurance Company, his insurance provider, to cover the costs of the accident under its uninsured/underinsured policy. *See* R. 15, Attach. 2 (State Court Complaint). At the time of the accident, Mr. Damron was driving a car owned by Dennis Branham, who was insured by Grange Mutual. R. 1 at 3, ¶¶ 9, 10. Grange Mutual filed this suit seeking a declaration of whether it had to cover Mr. Damron in the underlying state court action. Grange Mutual has not intervened in the state court action or filed a state court declaratory judgment action. Therefore, the question of coverage is only before this Court but will certainly have a direct impact on who is responsible for the losses, if any, of Mr. Pinson in state court.

Consequently, this Court could decide whether Grange Mutual is liable to Mr. Damron to cover his losses and defend him in the underlying state suit. Grange Mutual's potential liability is the discrete issue presented in federal court, and it is not duplicated in the state court proceeding, enabling the action to provide a final resolution to Grange Mutual's question of liability to Mr. Damron and resolve the question of its indemnity obligation with regards to Mr. Damron. At the same time, the federal action would not resolve the entire controversy between all of the parties. Thus, the first factor weighs against exercising jurisdiction because the federal court's decision could not settle the ultimate controversy. In contrast, because the federal court's decision would clarify the discrete legal relations between Grange Mutual and Mr. Damron, the second factor weighs in favor of exercising jurisdiction.

### C. Factor Three: Is this a Race for Res Judicata?

The third factor is intended to prevent parties from improperly using federal jurisdiction merely to gain a favorable forum, and courts have been "reluctant to impute an improper motive .

13

. . where there is no evidence of such in the record." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 558 (6th Cir. 2008). No evidence has been presented that the Petitioner is engaging in "procedural fencing" or a "race for res judicata" by filing its declaratory judgment action in federal court. Particularly since the Petitioner filed in federal court prior to the initiation of the state court action, and the Petitioner is not a party to the state court action, procedural fencing seems especially unlikely.

### D.  Factor Four: Will the Action Increase Friction Between State and Federal Courts?

Because "a district court might be indulging in 'gratuitous interference' if it permitted the federal declaratory action to proceed" when a suit involves the same parties and deals with the same state law issues as an existing state court action, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 283 (1995) (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)), a district court must also consider three additional sub-factors to determine whether its exercise of jurisdiction would increase friction with state courts:

> 1) whether the underlying factual issues are important to an informed resolution of the case;
>
> 2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> 3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale Ins. Co.*, 513 F.3d at 560. The Sixth Circuit has interpreted the first of these sub-factors to focus on the issue of "whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Id.* When

the liability issues central to the state court proceeding are distinct from those central to the federal court proceeding, federal jurisdiction is appropriate, but when "the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court," the Court should decline to exercise its jurisdiction. *Id.*

Here the parties have conceded that the issues in the two cases are generally distinct. The state court will determine Mr. Damron's alleged negligence in causing the accident and Mr. Pinson's alleged injuries stemming from the accident. *See* R. 15, Attach. 2 (State Court Complaint). The federal proceeding, however, would deal exclusively with the issue of Grange Mutual's liability to cover Mr. Damron under its insurance policy with Mr. Branham and would focus on the factual issue of whether Mr. Damron had permission to drive Mr. Branham's car, an issue unlikely to be before the state court. *See* R. 1 at ¶¶ 9–17 (alleging that Mr. Damron did not have permission to drive Mr. Branham's car and that Grange Mutual's policy does not cover non-permissive use of an automobile). Since the issues in the two cases are distinct, this sub-factor weighs in favor of exercising jurisdiction.

The second sub-factor focuses on which court is in a better position to resolve the issue in the declaratory action. States are normally in a better position to resolve insurance issues because insurance companies are regulated by states for the benefit of their citizens. *Scottsdale*, 513 F.3d at 561. Furthermore, when a novel issue of state law is presented states are clearly in a better position to decide the issue than federal courts. *Id.* at 560. But, when the insurance company is not a party to the state action, and the scope of the coverage or an obligation to defend are not before the state court, a federal court decision on these issues is appropriate. *Id.* (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)).

15

Since this is an insurance action, the state court is better situated to decide the issue, weighing against exercising jurisdiction. However, permission, as it relates to insurance coverage, is a settled, not novel, issue of Kentucky law. *Preferred Risk Mut. Ins. Co. v. Ky. Farm Bureau Mut. Ins. Co.*, 872 S.W.2d 469, 470–71 (Ky. 1994). Additionally, the insurance company here, Grange Mutual, is not a party to the state action, and its obligation to defend is not an issue in that action, weighing in favor of exercising jurisdiction. Thus, within this sub-factor facts are present which weigh both in favor and against exercising jurisdiction, causing the impact of this sub-factor to be neutral.

The third sub-factor focuses on whether the issue implicates important state policies. The Sixth Circuit has recognized in several cases that states are in a better position to resolve insurance disputes because they are more familiar with state law, they regulate the insurance companies for the benefit of their citizens, and are best situated to identify and enforce the policies underlying those regulations. *Scottsdale*, 513 F.3d at 561 (citing *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 815 (6th Cir. 2004)). While federal courts are not unfit to consider insurance questions, *id.*, the presence of this exclusively state issue causes this sub-factor to counsel against exercising jurisdiction.

Ultimately, therefore, the fourth factor is neutral: the state court's resolution of factual issues is not necessary, but either the state or federal court is capable of deciding this case, and the issue implicates state insurance policies.

### E. Factor Five: Availability of an Alternative Remedy?

In general, Kentucky law provides an alternative remedy to declaratory judgment in

16

federal court. The Petitioner here could have filed a petition for declaratory judgment in Kentucky state court under KY. REV. STAT. ANN. § 418.040 (2006). The Sixth Circuit is split regarding whether the state court remedy must be better or more effective than a federal declaratory action or simply provide an alternative remedy for the purposes of this factor. *See Scottsdale*, 513 F.3d at 562 ("As with the first two factors, our precedent is split regarding whether the possibility of seeking a declaratory judgment or an indemnity action in state court counsels against the district court exercising jurisdiction.").

Regardless, as discussed above, state courts are best situated to decide insurance issues, like the one here. In fact, the *Bituminous* court stated that declaratory judgment actions seeking an advance opinion on indemnity issues "'should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem.'" *Bituminous Cas. Corp.*, 373 F.3d at 812 (quoting *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986)). When the actions are filed in two separate courts, "'confusing problems of scheduling, orderly presentation of fact issues and res judicata are created.'" *Id.* (quoting *Manley, Bennett, McDonald & Co.*, 791 F.2d at 463). Thus, this factor weighs against exercising jurisdiction.

   F. Balancing

In deciding how to balance these factors, district courts must rely on the "unique and substantial" discretion granted to them by the Declaratory Judgment Act. *Scottsdale*, 513 F.3d at 563. In this action, this Court considers the first factor a heavy one because allowing everyone to resolve everything in one court promotes efficiency, builds trust in the legal system, and allows parties to preserve resources. *See, e.g., State Farm Fire and Cas. Co. v. Odom*, 799 F.2d 247,

17

251 (6th Cir. 1986) (Merrit, J., *dissenting*) ("Such actions require two courts rather than one to address the same basic issues and tend to increase the legal fees of the parties and the time it takes to resolve the underlying dispute."); *Manley, Bennett, McDonald & Co.*, 791 F.2d at 463 ("Such actions . . . should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem. Otherwise confusing problems of scheduling, orderly presentation of fact issues and res judicata are created."). In this case, factor one weighs against exercising jurisdiction. Obviously, however, the legal relations between Grange Mutual and Mr. Damron would be decided by this case, and thus the second factor weighs in favor of exercising jurisdiction. The third factor is inapplicable, the fourth factor could go either way, and the fifth factor weighs against exercising jurisdiction. The Court could use a rote application of these factors to find either that it should or that it should not exercise jurisdiction here. Rather than doing so, the Court has attempted to use the factors to guide it in determining how to exercise its discretion given the facts of this particular case.

  Mr. Damron and Mr. Pinson were involved in a regular, common car accident. Were this Court to exercise jurisdiction, Mr. Damron, an individual pro se defendant, and Safeco, Mr. Pinson's insurance company, would be forced to litigate in two forums to receive a simple declaration of rights under an insurance contract—a matter that could easily be handled by the state courts that are more familiar with Kentucky insurance law in the first place. Even the Petitioner here, Grange Mutual, would be forced to litigate in two forums in a reservation of its rights in the state court until the federal action concluded, simply so it can choose the forum in which its rights against Mr. Damron are declared. Because this Court is a court of limited jurisdiction, it could not decide all the issues in the underlying action, even if the parties placed

them before it (both Mr. Pinson and Mr. Damron are Kentucky citizens). The state court, on the other hand, is positioned to decide every issue amongst all the parties in this matter, allowing the parties to fight this battle on a single front. Furthermore, since the issue is one of state regulated insurance contracts, an issue with which the federal government has no special interest, the federal court does not provide a superior forum in which to decide the case. Finally, by refusing to exercise its jurisdiction the Court here would not rob the Petitioner of its only remedy. The Petitioner has an adequate, if not superior, remedy in a Kentucky state declaratory judgment action. These facts lead the Court to conclude that it should not exercise jurisdiction in this matter.

Petitioner argues that its work here will be wasted if this Court were to dismiss. This is not true. First, any discovery done here will be pertinent and usable in state court. Second, the very issue that Petitioner wants this Court to decide will be decided by the state court. Thus, the preparation on the permissive user issue done by the parties will not be wasted. Finally, Mr. Damron, the Defendant here, provided what may be the strongest argument weighing against the federal court's exercise of jurisdiction in this case when he urged the Court at the hearing to get everyone in the same courtroom to straighten everything out.

In 1949 the Sixth Circuit warned district courts not to exercise jurisdiction over a declaratory judgment action "unless it serves a useful, practical purpose." *Panhandle E. Pipe Line Co. v. Mich. Consol. Gas Co.*, 177 F.2d 942, 944 (6th Cir. 1949). Given the facts of this case, the Court will heed that warning here and in recognition of its limited jurisdiction will not exercise jurisdiction over the declaratory judgment action.

19

IV. CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1) The Intervening Plaintiff's Motion to Remand, R. 15, restyled as a Motion to Dismiss is **GRANTED**.

(2) The Court declines to exercises its discretion under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and this matter is **DISMISSED WITHOUT PREJUDICE**.

(3) All other pending motions are **DENIED AS MOOT**.

This the 16th day of July, 2008.

Signed By:

*Amul R. Thapar* AT

United States District Judge